3167 Western Arkansas, Stephanie Reygadas v. DNF Associates Mr. Little, you have the floor. Good morning, Your Honors. Thank you. May it please the Court, my name is Brendan Little. I represent Appellant DNF Associates, LLC. I have previously reserved four minutes of rebuttal time. This case concerns the Fair Debt Collection Practices Act, commonly known as the FDCPA, which was codified by Congress in 1977 to regulate the interaction between consumers and debt collectors. We know that by the express terms of the statute as well as Supreme Court precedent. The FDCPA has several provisions that regulate what a debt collector can say, when a debt collector can call a consumer, when a debt collector must send letters, and what the content of those letters must contain. However, this record is devoid of any evidence that DNF attempted to engage in any affirmative conduct with Reygadas in any fashion. Why doesn't the prior state court suit enough to establish that this particular debt buyer made itself a debt collector, even if your general proposition is sound? Because no different than hiring or contracting with a third-party debt collector to liquidate the debts, here they contracted with a third-party law firm, who under the statute would be a debt collector. So whether you contract with a third-party traditional debt collector or a third-party law firm, both third parties are deemed debt collectors and would be subject to the statute's purview. The district court erred for two reasons. Is there any case on that that involves this sequential enforcement by a debt buyer against a specific debtor? There is no case law on that point particularly, although the McAdory decision from the District of Oregon did determine that filing lawsuits against third parties using a third-party law firm is of no moment. Of course, I will get to here in a moment. The McAdory decision was reversed by the Ninth Circuit in March after this briefing by a two-to-one decision. And I would note that the district court failed for two reasons. First, because the DNF is a passive debt buyer and it did not affirmatively engage in any conduct, that is a requirement for the principal purpose definition of debt collector. And two, if this court were to determine that DNF is a debt collector, the district court erred because DNF did not engage, there's no direct liability, DNF did not engage in any specific conduct. The record is undisputed that its third-party debt collector, RGS, is the one that sent the letter that triggered the subject lawsuit. But turning to that McAdory decision from March of 2020, there the majority followed the Third Circuit in Barbado from 2018, holding that a debt collector or a debt buyer, a passive debt buyer, can be a debt collector. However, Judge Bea's strong defense clearly highlights the flaws in both the McAdory majority and Barbado's analysis. Using Judge Bea's words, the fact that a simple grammatical error toppled both the Third and Ninth Circuit Courts of Appeals compelled him to go back to the basics. And what he found when going back to those basics is that the McAdory majority nor Barbado could explain why the word collection cannot refer to an action. Judge Bea correctly states that whether it's prong one, principal purpose, or prong two, regularly collects, it's the business's action or activity that brings it into the realm of the statute. Counsel, let me ask you about that. I would like to hear you expand, if you would, on the business activity versus revenue test for determining principal purpose. It seems to me that might be a relevant point for our analysis. Sure. What Judge Bea says is we have to look at the activity of the business. Because if we use, taking a step back, the term collection can have two meanings. It's identified both by the Third and Ninth Circuit. It can be one, the act or process of collecting, or two, versus something collected. And the Third Circuit chose definition two, something collected, and looked at the business's overall purpose versus the action. But looking at Judge Bea's defense, when he actually dove into the statute, using the something collected definition does not make sense grammatically, and it does not make sense with the statute overall. If we say the principal purpose of DNF business is something collected, he says it sounds absurd, and it is. Congress did not codify the FDCPA to regulate a collection of debt. The FDCPA by express terms was designed to govern interaction between debt collectors and consumers. Counselor, how can your client stay in business for any meaningful period of time if it doesn't collect on debt? Of course, any business that's in business is looking to generate a profit or revenue. If it didn't, then the business, of course, would fail, and it would shut its doors. But here, the statute, based on the definition of collection, compels this court that it means affirmative conduct or affirmative activity. You know, the Third Circuit's rationale in reaching the conclusion that it's something collected versus the act or process of collecting was based solely on the fact that the regularly collect prong uses a verb, and the principal purpose prong only uses a noun. But they provide no other further explanation as to how they reached that conclusion, or they provide no basis as to why they chose the something collected version versus the regularly collects version. And that's what Judge Bea jumps on and highlights on. And when you look at traditional statutory interpretation analysis, you have to look, one, at the statute's overall purpose, and, two, what the balance of the statute means using that term. So here, the FCC's purpose is to regulate collection practices between third-party debt collectors. And if you use that term, collection, throughout the balance of the statute, every other time the word collect or collection is used or the derivative is used, it references action or affirmative conduct. So the only time that the something collected version would be or definition would be used would be in the regularly collects prong, and that is simply inconsistent with statutory interpretation. As the court already ruled on prong one in Henson, you must give the same term the same meaning throughout the statute. You can't change the term or the definition of the same word throughout the statute to get the end result that you want. And Judge Bea, in making that analysis, says, look, you have to evaluate each definition of collection in that principal purpose prong and on the statute as a whole. And when you look at the statute as a whole, again, the statute as a whole governs interaction. It tells the debt collector when he can make calls or not make calls, what the letters must say and when letters must not say, and who the debt collector can communicate with. And again, referring all to affirmative conduct. And if it means something collected, the use of collection in the balance of the statute would be inconsistent, and it would be the only time the term or the definition of something collected would be used. It flies in direct contrast to traditional statutory authority analysis. But doesn't the argument depend on our finding that the hiring of debt collectors to collect debts for your client does not constitute the collection of debt? It would, Judge.  It would make that determination. The court would have to find that way. I agree with you. And so why shouldn't we find that way? I mean, if that's the only thing your client does, your client does two things, right? It buys debt, and then it hires others to collect debt. That's essentially your proposition. And you're saying that's not the primary purpose is collecting debt. So how is it that the actions of those your client hires, and if they're really the only ones your client hires, how is it that that's not your client's primary purpose to collect debt? Well, we're not contesting primary or purpose. It comes down to what collection really means. And is collection actually an action, or is it something collected? And we submit that it is actually action. And so merely contracting with a third party is not interaction with consumers. The statute is designed or was codified to govern interaction with consumers. And here, by contracting with a third party, there's no interaction with consumers. And the consumer is not harmed under that analysis because the FDCPA governs the collection efforts made by those third parties. But more importantly, Judge, if you look at giving my adversary and the Ninth Circuit and Third Circuit's reasons, and we're not saying that it's not giving it its plain meaning, at a minimum we have to look at whether it's ambiguous. Because clearly both the Third and the Ninth Circuits have decided or determined that collection can mean one of two things, the actual process of collecting or something collected. And if there's some ambiguity there, we have to look to the legislative history. And that's not what happened in the Third Circuit, and that's not what happened in the Ninth Circuit. And I urge this Court to look at the legislative history because if we look at the legislative history, it shows that the debt buyer was not designed to be subject to this particular statute. The purpose of the bill by the Senate Committee was to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restriction on the ethical debt collectors. It was, again, designed to regulate interaction. And Congress was clear when they codified that statute and then modified it in 1986 to add or to remove the attorney exclusion. Prior to 1986, attorneys were excluded from the FDCPA. But in 1986, Congress understood and realized that attorneys were increasingly getting involved in the debt collection process, so it removed that exception, and attorneys can be debt collectors themselves. And in 1986, Congress could have modified the statute to include debt buyers, but it didn't. And so Congress, by the legislative history, expressly indicates that debt buyers were not supposed to be part of that particular statute. Counsel, I do have a question. If we were to interpret the word collection as including hiring of other people to collect for you, what implications would that have for other people other than your client? How broadly would that be applicable? Well, I don't think you can find that way, Judge, because then it would go back to subjects of original creditors and people who originate that subject to the FDCPA. Hypothetically... Counsel, I was going to ask opposing counsel, and I guess it's relevant to Judge Graz's question. Under the Ninth and Third Circuit interpretation, it seems to me that every buyer of defaulted junk bonds thereby becomes a debt collector under the statute. I would agree, and that's why, respectfully, the Third Circuit and Ninth Circuit got it wrong. If we're looking for collateral consequences, I would say that's a pretty significant one. Absolutely. But what is also more telling is what the state legislators have done. Specifically, California has the California Rosenthal Fair Debt Collection Practices Act. It's a carbon copy, or almost a carbon copy, of the Fair Debt Collection Practices Act. But what California did in 2012 was codify the Fair Debt Buying Act. The California legislators looked at it on its own to say, look, debt buyers that are not subject to our Rosenthal Fair Debt Collection Practices Act, we have to come up with a separate statute and to codify the Debt Buying Act, subjecting debt buyers to regulation. Likewise, Colorado did the same thing in 18. It was expressly clear that it was not clear that debt buyers were subject to their state corollary act, so they amended the definition to include debt buyers within that definition. So the states are recognizing that if they're modeling their state statutes after the federal statutes, that, hey, debt buyers are not within the purview of that statute. We either have to modify our statutes or create whole new statutes to make sure that we're regulating the conduct of a debt buyer. And so here, what my adversary is asking to do is this court to legislate, to effectively expand the scope of the FDCPA to include the debt buyer. And respectfully, I think that is for Congress to decide, and this court does not have the ability to expand the scope of the statute. If Congress believes that the FDCPA should be expanded to include debt buyers, it's on Congress to expand that statute. And, you know, when interpreting, looking at the legislative intent, the Massachusetts Supreme Court in 2018, Dorian, looked at the legislative intent with respect to the FDCPA. While Dorian was deciding, looking at the Massachusetts state corollary, again, the state statute was modeled after the FDCPA. And the definition of debt collector in the Massachusetts state statute was identical to the definition of debt collector in the Fair Debt Collection Practices Act. And in saying that the debt buyer was not subject to the act, in doing a deep dive into Congress's legislative intent, the Massachusetts Supreme Court held that there was no evidence that Congress ever intended to include debt buyers that owned debt and used third parties to collect those debts and have no contact with consumers to be within the definition of debt collector. I see I'm well into my rebuttal time. I ask and reserve the remainder of my time for rebuttal. Thank you. Very good. Thank you. Mr. Pulver? Good morning. May it please the court. Adam Pulver for Plaintiff Appellee. Stephanie Wright got us. There's no dispute here that there must be interaction with the consumer for there to be ultimately a violation of the FDCPA. The question is who can be held liable for conduct that is in violation of that interaction. And the FDCPA was set up in two separate ways. One, you can regularly collect. Counselor, your audio is not very good. I don't know if you can move the mic or anything. Is that better, Your Honor? Can you hear me now? That's better. All right. Thank you. On the point you were making, I was going to ask, did your client sue Radius Global Solutions? They did not sue Radius Global Solutions. And the reason why, and this case is slightly different than the McAdory and Barbato case, is because of the nature of the violation here. And this goes to the second question on appeal, is that Radius, there's no dispute, did not have the actual knowledge of Miss Ray Goddess' represented status. So therefore, there could not be the elements of the violation because it did not have the knowledge of the represented status, whereas DNF did have knowledge of the represented status. So RGS, whereas in Barbato and McAdory, there was an independent violation without the principal being involved. Here, the district court, like the two courts of appeals, was correct to find that a business whose dominant objective is debt collection activity, whether it achieves that goal itself or by hiring third-party agents, has a principal purpose of debt collection. The distinction and focus on the meanings of the two different definitions of collection is really unnecessary. Even assuming that... Let me move, as Judge Gross did, to the implications of the argument. Do you disagree that your argument, if accepted, would make every buyer of defaulted junk bonds thereby a debt collector? Not necessarily. The question would not be what the bond... Which ones wouldn't be? Anyone that does not have a principal purpose of collecting. So, for example, many buyers of junk bonds repackage and sell those. So if an entity repackaged and sold those, and that was 60% of its business... Wait a minute. Before it's repackaged and sold, it's a collection, it's a group, it's a covey of assets that can only yield profit to the extent it's collected, right? Or sold at some kind of a discount. But those are two different things. And if the majority of the business is collecting, then yes, they would be a debt collector under this definition, and they will have been for the past 50 years. Let me move across the chain of debt buyers. What about a company or investment entity that's in the business of buying accounts receivable that are a year or more in default? Again, if the majority of its business is by collecting them, yes, they would be a debt collector. And what case has ever come to that conclusion? Well, first, they would have to be consumer debt to be a debt collector, so that might be why the accounts receivable... Of course, but most accounts receivable... I'm talking about consumer debt, obviously. The accounts receivable of a retail organization, Macy's. I don't think those cases are distinguishable from McAdory, which involved Kay Jewelers. These are all about... That's the fact pattern in McAdory. So I don't think that that would be particularly... Yeah, okay, that's the way I read it. But if we're talking collateral, the extent of the consequences in the investment world, these are much more significant than the case we have here. Well, I don't know if the consequences are that way, because as I said earlier, there still has to be a violation of the FDCPA. So this is not a case where there's going to be liability for actions that were not illegal, you know, early performance decisions. You are giving substantial settlement collection, settlement power to a much vaster group of plaintiffs than just, I guess, defendants, than just those that would ultimately be liable. Well, I agree, but that's not necessarily contrary to congressional intent. The first thing that happens in my Macy's account for sealable buyer is a class action. Well, not necessarily. There would have to be a violation that is amenable to class treatment, and again... No, why would there have to be a violation? They are in the business of collecting, and they have a bunch of debts to collect. Okay, so you got one attempted collection, and now you got a class action on behalf of the 5,000 retail consumers who are in default. I apologize if it's not unclear, but I am not in any way suggesting that simply by having a loan in default, you have a claim under the FDCPA. There has to be a violation of the FDCPA, an attempt by someone to collect in violation of the action. And here, there are elements of that violation here, and we are not suggesting liability in any situation simply because you are a debt buyer. It's not unlawful to be a debt buyer. It's unlawful to be a debt buyer who is a debt collector who is engaged in practices that violate the FDCPA, and you would use the ordinary principles of agency to determine whether the debt buyer is liable for the violation. And that's been recognized, and my adversary acknowledges that in their brief, that one debt collector may be held liable for the violations of another debt collector in various situations. The question is whether the agency test has been met in the particular situation. Here, we believe that, and the district court agreed, that general principles of agency make DNF directly liable for a violation of the FDCPA, which is here making contact with a party that is known to be represented by counsel. That would not mean that every debt that they purchase, they're violating the FDCPA on. It's only where here they knew there was a, Ms. Regattas was represented by counsel, and that their agent nonetheless reached out and contacted her directly. That's why there's a violation of the FDCPA. But counsel, wouldn't that essentially be reading a directly or indirectly into the principle purpose clause of the statute? No, Your Honor, and I believe the Barbato and McAdory courts explain why, but briefly, a purpose is by its very nature achieved directly or indirectly. So if you have a purpose of feeding the hungry, you can achieve that purpose by giving money to a soup kitchen, which would be indirectly, or by ladling out the soup yourself. There's nothing inherent about a purpose that means you have to achieve your purpose directly. Whereas collects, which is the verb in the regularly collects provision, there could be a reading of that that would say that you have to do it directly unless they specify the indirectly or directly. So I think a purpose by its very nature is something that is achieved directly or indirectly, and so there's no reason to presume that you only achieve a purpose by directly carrying out acts yourself. That's certainly not the normal usage of the word purpose. Well, if we read collection to mean thing collected, can your client still prevail? Thing collected. Well, I believe that's the... the activity of collecting was the definition I believe my adversary is referring to versus the accumulation of debt. But I think either way my client can prevail because if you have a purpose of the activity of debt collecting, that does not mean you do it directly yourself. If you have a purpose of accumulating debt, obviously I think then it's an even clearer win for my client. But I think either way, since the purpose of having someone collect the debt is DNF's whole lifeblood. And so if that's their goal, at the end of the day someone has to collect the debt, and that is what a purpose is. And so their purpose is debt collection. And notably this is not a case where they had pointed to anything in the record, did not touch any evidence suggesting they do anything else. So that's clearly their principal purpose as well. Indeed, it's their only purpose as I believe you recognized earlier. One point I want to make in reference to a question that Judge Loken made is, here the issue of whether DNF suing itself in courts in Arkansas is debt collection activity of the sort that makes the rest of this analysis kind of drop away. And there is support for that in the Hynes v. Jenkins case from the Supreme Court where the court said lawsuits are debt collection activity and obviously the companies in those cases are represented by counsel, but the party that's doing, the legal entity that's filing lawsuits is the debt buyer in this case. And businesses are the, who are regulated as debt collectors. And businesses act through people. They act through either their employees or someone else in some sort of agency relationship. So it doesn't matter, and it certainly is not contrary to the statute, for DNF to be held liable whether it hires someone as their employee to knock on doors or ring doorbells or if they hire another company to do it for them. No matter what, its purpose, its goal is the same. And that's why we have separate principle, purpose, and regularly collects definitions. They're going to different aspects of how you can conceptualize a business. One way is the things that the business itself actually does and one is the business's goals. Counsel, this court has said pretty clearly that the act does not regulate creditors' activities. Why is this not a creditor's activity? So I think to the extent that this court has ever said that, I don't think it actually has clearly said it. I think it was in a different context applying a different definition. The case law that it cited for that proposition has all been overruled expressly by the Supreme Court in Henson v. Santander. And I believe the Seventh Circuit case that was Seventh Circuit case law that was relied upon in citing that has been reversed. That was all based on the default test, which said that if you buy debt once it's in default, you can still fall under the regularly collects definition. And Judge Gorsuch's opinion got rid of that basis. So since there's been no actual holding of this court saying that the categories are mutually exclusive and no court has held for any reason other than default test, which was overruled in Henson, that the categories are mutually exclusive, I don't think that that applies here. Certainly, Judge Akuta's opinion and Schlegel said there's no textual basis to conclude that the categories are mutually exclusive. And both the Third Circuit and the Ninth Circuit have explained. In fact, the Third Circuit said it's case law had said that was no longer good law under Henson. So I don't think that's an obstacle here. There's also, to the extent that there was a difference, some of the case law that discussed that focused on how the regularly collects definition explicitly applies only to debts owed or due to another. So in that sense, there is a difference between the creditor and the debtor. However, this provision, the principal purpose, says any debts. So to the extent that the references to the exclusivity between creditor and debt collector in those cases were applying to regularly collects definition, that would not apply here because of the textual distinction. Briefly on the second question, as this court held in Schmidt, general agency principles apply under the FDCPA. And it's clear that, as cited in the restatement, a principal can be liable when its agent doesn't act if that would have been unlawful for the principal to do him or herself. And here, DNF acknowledges that it was represented by counsel. It could not have gone out and sent her a letter directly. And therefore, this is a plain application of the principles in the restatement and recognized by the Seventh Circuit. In the Sterling case that we cited, this is not vicarious liability. This is direct liability. Counselor, are you relying on the third restatement of agency? Yes, Your Honor. Wasn't that written 30 years after the FDCPA? It was, Your Honor. However, this is not a new agency principle. Certainly, this is longstanding principles of agency. So there's no reason to believe that there's any difference. And I'm not aware of this being a new principle that's been recently added to the common law. How about the converse under the third restatement? Can the agent be liable for a violation caused by the principle? No, Your Honor. And that's also been resolved by this court in the Schmidt case. The converse was the Schmidt case, whereas this court said that the knowledge can't be imputed downward from the principle to the agent. So this court has already resolved that issue. And my time has expired unless there are any further questions. Thank you, Your Honor. You're good. I'd like to, in rebuttal, first take Mr. Pulver's argument in reverse. I think that what Mr. Pulver is asking is for this court to find direct liability to DNF. DNF did not send the letter. It is clear that the triggering activity was done by RGS. And if RGS didn't violate the FDCPA, DNF would only be vicariously liable for legal conduct. So if RGS did not violate the statute, then there's no violation against DNF. But we only get there if this court determines that DNF is a debt collector. And there are a couple points I want to make on that point. Mr. Pulver said that lawsuits are debt collection activity. They are by the lawyers that bring them, not the parties that they've been retained to represent. And lawyers are governed and subject to the FDCPA. That was the amendment that was made by Congress in 1986. Again, Congress recognizing that the statute needed to be changed in order to incorporate the lawyers. The other point I wanted to make was that Mr. Pulver was arguing about, hey, the FDCPA is only triggered when there's an attempt by someone to collect or they're engaged in activity that violates the statute. Those are all actions. They require something to happen. And if this court has any difficulty, and I see my time has expired, I'll wrap it up quickly, is that if this court has any hesitancy in following Judge Bea's dissent, then I encourage this court to do what the other two courts have not done and go and look at the legislative history. Because if it is ambiguous as to which definition of collection needs to be applied, I think Judge Bea's roadmap and the legislative intent all point that what is supposed to happen is that there's supposed to be affirmative conduct. For these reasons, I ask this court to reverse the district court and grant summary judgment to D&S. Very good, counsel. The case has been very well briefed. Thanks for using the new technology with us to get a.